IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GRACE GRICE,                                )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        CIVIL ACT. NO.  3:12cv645-CSC
                                            )               (WO)
SL ALABAMA, LLC,                            )
a subsidiary of SL America Corp.,           )
                                            )
        Defendant.                          )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

The plaintiff, Grace Grice ("Grice"), a former employee of SL Alabama, LLC ("SL Alabama"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII"), and 42 U.S.C. § 1981.  Grice alleges that she was subjected to discrimination on the basis of her gender when she was denied promotions.  She also contends that she was subjected to discrimination and retaliation on the basis of her race (Caucasian) when she was terminated from her employment.  The court has jurisdiction of the plaintiff's claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 28 U.S.C. § 2000e-5.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Now pending before the court is the defendant's motion for summary judgment (doc. # 26) filed on June 24, 2013.  Grice has filed a response in opposition to the motion (doc. #

32).  After careful review of the motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the defendant's motion for summary judgment is due to be DENIED.

## II.  THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in

---

[1]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination."  FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the defendant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendant's properly supported motion for summary judgment, Grice is required to produce "sufficient [favorable] evidence" establishing a violation of Title VII or 42 U.S.C. § 1981.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*.  Hence, when a plaintiff

fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

4

there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

## III.  DISCUSSION

### A.  FACTS[2]

Grace Grice secured a temporary position at SL Alabama, and began working on April 20, 2010.  (Doc. # 26-1, Ex. A, Dep. Grice at 31).  SL Alabama manufactures light parts for automobiles.  Grice became a permanent employee as a line operator on the second shift assembly in September 2010.  (*Id*. at 41).  Roland Brooks ("Brooks") and Valisha Pogue ("Pogue") were her immediate supervisors on second shift, and Avery White ("White") was her team leader.  (*Id*. at 40-41).  Brooks, Pogue and White are African-American while Grice is Caucasian.

Between September 2010 and June 2011, whenever a material handler position

---

[2] For the purposes of summary judgment, the facts are viewed in the light most favorable to Grice and all reasonable inferences are drawn in her favor.

became available, Grice asked to be placed in the available position.[3]  (*Id*. at 70).  It is undisputed that a material handler position paid more than Grice's line operator position. According to Grice, Pogue told her that she could not get a material handler position because she was a female.  (*Id*. at 68-69, 81).  Grice also contends that when Dimitri Morris[4] was promoted to team leader in December 2010 or January 2011, she sought but was denied the material handler position he vacated.  (*Id.* at 69-70, 80).  Grice also contends that Pogue told her that she could not have that specific position because she was female.  (*Id*. at 81).  Two or three days later, when Morris stepped down from the material handler position, Grice again asked Pogue for the position, and Pogue said that Morris' position was going to a male. (*Id*. at 84)

When a material handler of Mexican descent quit,[5] Grice told Brooks that she was interested in his material handler position.  (*Id*. at 91).  According to Grice, Brooks said "[h]e had someone for that line.  He needed [her] somewhere else."  (*Id*.)  Grice bid on two material handler positions that were advertised but she did not get either position.  In addition, other material handler positions were not posted so Grice was unable to bid on those positions.  (*Id*. at 71).  According to Grice, every material handler position on the second shift went to an African-American male.  (*Id*. 84-85).

_____

[3]  The record does not clearly establish the dates that Grice told Brooks and White that she was interested in or wanted to apply for available material handler positions.

[4]  Although Grice identifies this employee as Demetrius, the record reflects that his name is Dimitri Morris.

[5]  Neither Grice nor the defendant identify this employee by name.

6

On June 6, 2011, Grice complained to Juandell Wilson ("Wilson") in Human Resources that she was being discriminated against based on her race and sex because she was being denied a promotion to a material handler position. (*Id*. at 86). Prior to making an official complaint, Grice stopped Wilson at the time clock and asked him why a female could not be a material handler.[6] Wilson told Grice that there was no problem with a female having a material handler position. (*Id*. at 87). Grice does not remember the specific date that she spoke to Wilson at the time clock.

When Grice made her formal complaint to Wilson, she specifically complained that Brooks and Pogue were discriminating against her because of her race and gender. Wilson wrote down everything Grice said. (*Id*. at 186). Shortly thereafter, Grice noticed that Brooks and Pogue started to "nitpick" her. (*Id*. at 149).

On June 23, 2011, Grice was working the second shift assembly line. Carlton Floyd, an African-American male, was working as a material handler on the same shift. That night, Floyd hit her with an utility cart.[7] According to Grice, this was not the first night that Floyd ran into her with the cart. In fact, she complained to Brooks on the previous night that Floyd hit her with the cart. (*Id*. at 43, 48, 51-52). Grice describes the incident as follows:

Q:    What happened after Carlton Floyd hit you with a buggy?

---

[6] Grice also complained to her team leader White about not receiving a material handler position. According to Grice, White said "he'd check" on the position. (*Id*. at 96). Grice got no further response from White.

[7] The defendant dispute that Floyd actually hit Grice. The defendant asserts that Floyd only got close to Grice with the cart. Of course, for summary judgment purposes, the court construes the facts in the light most favorable to Grice.

A:  He – I hollered, hey, and he said, you need to move.  And he called me a bitch.  And I was hurting, and I told him, no, he needed to watch where the F he was going and –

Q:  Watch where what, now?

A:  Where the F he was going.

Q:  I need you to use the full words.  I'm not going to be offended by them. Nobody in this room is, but I need to know.

A:  I told him he needed to watch where the fuck he was going.

Q:  Okay.

A:  And I started crying, and I walked off.

Q:  Okay.  What happened next?

A:  Avery come and asked me what my problem was, and I told him I was tired of being hit every night.  That was the third time he done hit me, and it hurt, and wouldn't nobody do nothing.

Q:  Okay.  What happened next?

A:  He goes and gets Roland and Valisha.

Q:  Okay. And what happened then?

A:  They come to my job and tell me to come to the office.

Q:  And did you?

A:  On the way to the office, I told Roland he needed to get Carlton in there, too.  And he told me to give him my badge.  I was fired.

(*Id*. at 100-01).

Brooks terminated Grice that evening, and sent Wilson an email notifying him that

Grice had been terminated.  It is undisputed that although Floyd called Grice a bitch during the exchange, he was not disciplined or terminated.

The defendant's version of the disturbance is markedly different.  According to SL Alabama, Grice became irate when Floyd got close to her with the buggy.  Brooks and Pogue were called over the radio to come to the line.  When Brooks and Pogue arrived, White was trying to get Grice to calm down but she got more upset.  (Doc. # 26, Ex. C, Dep. Brooks at 91-92).  Because she would not calm down, Brooks told her to turn in her badge and walk to the time clock.  (*Id*. at 93).  According to Brooks, Grice then said "you mother fuckers are going to get what's coming to you."[8]  (*Id*.)  At that point, Brooks took Grice's badge and Pogue clocked her out.  (*Id.* at 102).  Brooks then sent an email to Wilson telling him that Grice was terminated.  (*Id*. at 96).

## B.  THE LAW GOVERNING DISCRIMINATION CLAIMS

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices.[9]  *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  In an employment discrimination case, Grice bears the ultimate burden of proving that the defendant intentionally discriminated against her.  *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  This Circuit has consistently

---

[8]  Pogue testified that Grice cursed and used the word "fuck" "from one end of the plant to pretty much the other end."  (Doc. # 26, Ex. B, Dep. Pogue at 63).

[9]  42 U.S.C.A. § 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

held that federal courts, in resolving discrimination claims, do not review the accuracy of an employer's employment decision. *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (explaining that "Title VII is not a shield against harsh treatment at the workplace. . . .The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." and citing *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

To defeat the defendant's motion for summary judgment, Grice must first establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof.[10]  *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Under the law of this circuit, a plaintiff who presents direct evidence of discrimination is not required to rely on the *McDonnell Douglas* presumption to establish a prima facie Title VII case.  *Miles v. M.N.C. Corp*., 750 F.2d 867, 875 (11th Cir. 1985); *Lee v. Russell County Bd. of Educ*., 684 F.2d 769, 774 (11th Cir. 1982).

Grice relies on both direct evidence as well as the familiar *McDonnell-Douglas* framework to establish sufficient circumstantial evidence of discrimination to survive summary judgment.  To be successful, Grice must first prove, by a preponderance of the

---

[10]  Grice has not presented any statistical evidence to support a claim of intentional discrimination.

evidence, a prima facie case of discrimination. *Burdine,* 450 U.S. at 252-53. If Grice establishes a prima facie case, SL Alabama then has the burden of producing "some legitimate, non-discriminatory reason" for the challenged employment action. *See McDonnell Douglas,* 411 U.S. at 802. If SL Alabama satisfies this burden, Grice must then prove, by a preponderance of the evidence, that the articulated reasons were mere pretext for intentional discrimination. *Burdine,* 450 U.S. at 256. In the summary judgment context, Grice need only present evidence from which a trier of fact could conclude the defendant intentionally discriminated against her.

In her complaint, Grice alleges that SL Alabama failed to promote her and ultimately terminated her employment on the basis of her race and gender in violation of Title VII and 42 U.S.C. §1981. The court addresses each claim seriatim.

## 1.   DISCRIMINATORY PROMOTION CLAIM

Grice alleges that she was denied promotions to the material handler position because of her gender in violation of Title VII.[11] She relies on Pogue's statements that she could not be a material handler because she was female as direct evidence of discrimination. Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or

---

[11] Although Grice alleged in her complaint that she was also denied promotions due to her race, she points the court to no evidence, and a review of the record does not suggest, that she was denied a promotion to material handler because of her race. The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the court concludes that Grice has abandoned any claim that her discriminatory promotion claim was premised on race.

presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter,* 870 F.2d at 581-82. A plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). Direct evidence of employment discrimination "must indicate that the complained-of employment decision was *motivated* by the decision-maker's [discriminatory animus]. As a result, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [gender]" will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999).

SL Alabama contends that it is entitled to summary judgment on Grice's discriminatory promotion claim because Grice has not presented any direct evidence of gender discrimination. In addition, SL Alabama argues that Grice cannot establish a *prima facie* case of gender discrimination because there was a female material handler on another shift.[12] Grice contends that Pogue's comments that she could not have a material handler position because she was a female constitutes direct evidence of gender-based discriminatory

---

[12] To the extent that SL Alabama contends that Grice's EEOC charge was untimely, it is entitled to no relief on this basis. Grice filed her EEOC charge on August 1, 2011. She complains, and SL Alabama admits, that Grice challenges the denial of promotion to material handler in February 2011 which is within 180 days of the date of her charge. In addition, Grice requested the material handler position vacated by the male of Mexican descent which occurred in February or April 2011 which is also within 180 days of her EEOC charge. Consequently, at this juncture, summary judgment on this basis is due to be denied.

animus.  SL Alabama asserts that Pogue never made such statements and thus are not evidence of gender discrimination.  Moreover, relying on Pogue's deposition testimony, SL Alabama contends that Pogue did not make the decisions about promotions to the material handler positions.[13]  Pogue testified in deposition that Human Resources made the decision about who was promoted to material handler on the *first* shift.  (Doc. # 26, Ex. B, Dep. Pogue at 51).  Pogue was not asked about promotions to material handler positions on the *second* shift.  Although Pogue later denied having any input into who was promoted to material handler, (*id*. at 89), Grice testified in deposition that as supervisors, Brooks and Pogue made the decisions about who to promote to the position of material handler.  (Dep. Grice at 88, 91, 185).  Grice relies on Pogue's statements that she would  not consider Grice for the material positions because she was female, and Brooks' statement to her that he "already had somebody for that spot"  when she asked him for a material handler position.[14]  (*Id.* at 92).  She also points to her observations that Pogue and Brooks picked out and got their employees selected for promotions.  (*Id*. at 185).  Plainly, there are factual disputes concerning whether Grice was denied positions as a material handler simply because she was a female, and whether Pogue was a decision maker for the purpose of promoting employees to the material

---

[13]  Brooks testified that HR selected material handlers (doc. # 26, Ex. C, Dep. Brooks at 42), he also testified that attendance and write-ups govern whether an employee received a promotion to material handler. (*Id*. at 120). It is undisputed that Grice had no write-ups and no performance or attendance problems prior to her termination.

[14]  Grice also testified that when she asked her first team leader for a promotion to material handler, she was told by that supervisor that Grice was needed somewhere else and that Grice had to be a permanent employee to be considered for a material handler position.  (Doc. # 26, Ex. A, Dep. Grice at 97).

handler positions.  Taking the plaintiff's version of the facts as true, as the court is required to do at this juncture, a reasonable jury could conclude that Pogue told Grice that she could not have a material handler position because she was a female, and thus, discriminated against her when she and Brooks denied her promotions to that position simply because of her gender.  Thus, summary judgment on Grice's discriminatory promotion claim is due to be denied.

Even if the court were to conclude that Grice has not presented direct or statistical evidence of discrimination, Grice has presented genuine disputes of material fact regarding circumstantial evidence of gender discrimination under the four-part *McDonnell Douglas* test.[15]  To establish a *prima facie* case of discriminatory promotion, Grice must demonstrate (1) that she is a member of a protected class and (2) that she was qualified and applied for the promotion (3) but she was rejected despite her qualifications (4) in favor or an equally or less qualified employee who was not a member of her class.  *Jefferson v. Burger King Corp.*, 505 Fed. Appx. 830, 833 (11th Cir. 2013).  *See also Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1089 (11th Cir. 2004).

First, Grice contends that SL Alabama's failed to promote her to the position of material handler *on the second shift assembly line* because she was a female.  It is undisputed that all the material handler positions on the second shift were male, and that there were not

---

[15]  Because direct evidence of discrimination can be difficult to produce, the Supreme Court in *McDonnell Douglas* created a framework for analyzing a plaintiff's circumstantial evidence of discrimination. *See Nix*, 738 F.2d at 1184 (noting that the *McDonnell Douglas* framework is a valuable tool for analyzing disparate treatment cases)

any female material handlers on the second shift.  SL Alabama does not assert that Grice was

not qualified for the position of material handler, and in fact, Brooks testified that he knew

of no reason why Grice could not be a material handler.[16]  (Doc. # 26, Ex. C at 124).

Moreover, the position of material handler was a manual labor position that required no

specific skills or abilities.  SL Alabama does not dispute that Grice applied for at least two

material handler positions but those positions were filled by men.  SL Alabama's contention

on summary judgment is that Grice has failed to identify any similarly situated comparators.

However, Grice compares herself to the men who filled the positions vacated by Dimitri

Morris and the man of Mexican descent.  Consequently, the court concludes that Grice has

established a *prima facie* case of discrimination with respect to the two material handler

positions that Grice applied for but did not receive.

The burden of production now shifts to the defendant to proffer a legitimate, non-

discriminatory reason for failing to promote Grice. SL Alabama, however, does not proffer

any reason for not promoting Grice, and does not seek summary judgment on Grice's claim

on any basis other than her failure to establish a *prima facie* case.  Accordingly, the court

concludes that the defendant's motion for summary judgment on Grice's failure to promote

claim is due to be denied.

## 2.    DISCRIMINATORY DISCHARGE CLAIM

Grice also contends that she was subjected to a discriminatory termination based on

---

[16]  Grice also testified that Wilson told her he knew of no reason why she could not be a material handler.  (Doc. # 26, Ex. A at 87).

her race in violation of Title VII and 42 U.S.C. § 1981.[17]  Section 1981 "prohibits intentional

race discrimination in the making and enforcement of public and private contracts, including

employment contracts." *Ferrill v. Parker Group*, 168 F.3d 468, 472 (11th Cir. 1999).  Thus,

section 1981 provides a cause of action for race-based employment discrimination including

wrongful termination and retaliation, and the same prima facie elements are required to prove

a 42 U.S.C. § 1981 discrimination claim as are required to prove a Title VII discrimination

claim.  *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Brown v. American Honda

Motor Co., Inc.*, 939 F.2d 946 (11th Cir. 1991).  The allocation of burdens and elements of

a prima facie case are the same for employment claims stemming from Title VII and section

1981.  *See Richardson v. Leeds Police Dep't.,* 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v.

AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.,* 32

F.3d 520 (11th Cir. 1994).

   Because Grice complains that she was terminated while other employees who

committed similar acts of misconduct were not, the court construes this claim as a disparate

---

[17]  Section 1981 provides as follows.

   (a) Statement of equal rights.  All persons within the jurisdiction of the United States shall
   have the same right in every State and Territory to make and enforce contracts, to sue, be
   parties, give evidence, and to the full and equal benefit of all laws and proceedings for the
   security of persons and property as is enjoyed by white citizens, and shall be subject to like
   punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   (b) "Make and enforce contracts" defined.  For purposes of this section, the term "make
   and enforce contracts" includes the making, performance, modification, and termination of
   contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the
   contractual relationship.

42 U.S.C. § 1981.

treatment claim. To make out a prima facie case of disparate treatment, "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam)). In order to survive summary judgment, "in addition to being a member of a protected class, [Grice] must show either (a) that she did not violate the work rule, or (b) that she engaged in misconduct similar to that of a person outside the protected class, and the disciplinary measures enforced against her were more severe than those engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). *See also, Jones v. Bessemer Carraway,* 137 F.3d 1306, 1311 n.6, *modified by,* 151 F.3d 1321 (11th Cir. 1998);[18] *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The parties do not dispute that Grice is a member of a protected class, and that she was terminated. However, the defendant argues that Grice has no evidence that there were similarly situated African American employees who were treated more favorably than she and that were not terminated for similar acts of misconduct. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citing *Jones*, 137 F.3d at 1311).

The plaintiff must identify similarly situated employees, outside the protected class,

---

[18] The part of this opinion dealing with the establishment of a prima facie case by circumstantial evidence was not superceded by *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Only the part of the Court's opinion regarding direct evidence was superceded.

who engaged in nearly identical misconduct, but received better or more favorable disciplinary treatment. *See Maniccia,* 171 F.3d at 1368; *Jones,* 137 F.3d at 1311; *Jones,* 874 F.2d at 1540; *Nix,* 738 F.2d at 1186. It is Grice's burden to prove that a similarly situated person received better or more favorable treatment than she did. *See e.g., Holifield,* 115 F.3d at 1565.

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to determine whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed." In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal citations omitted) *quoting Jones*, 137 F.3d at 1311 (internal citations omitted).

In its motion for summary judgment, SL Alabama asserts that Grice cannot establish a *prima facie* case of discriminatory discharge because she "has no evidence establishing any other employee outside her protected class as similarly situated." (Doc. # 26 at 13).

> Plaintiff admits to using the obscenity "fuck" on the night of the incident with Floyd. Further, Plaintiff admits that there was a disturbance in the workplace on the night of that incident.[19] Plaintiff has no evidence concerning the nature and character of any other disturbances of comparable seriousness involving other employees of Defendant who were treated differently than Plaintiff.

(*Id.*) (footnote in original). The defendant is simply wrong. Grice alleges that she is

---

[19] Admissible evidence additionally demonstrates that Plaintiff was aware of Defendant's policy regarding disturbance in the workplace and that she violated such a policy. . . .

similarly situated to several African-American employees at SL Alabama,[20] and she points

to a number of employees who engaged in similar acts of misconduct of cursing and/or

causing disruptions at the workplace but who were not disciplined or terminated.

- Carlton Floyd was involved in the disruption on the floor that resulted in Grice's termination.  He also called Grice a "bitch" during the altercation.

- Kiki LNU and Brooks engaged in a verbal altercation in which Kiki called Brooks a "bastard" and a "fucker."  (Doc. # 28, Aff. La Donna Powell, Ex. 7)

- Mary Cook cursed Brooks and Pogue and called Brooks a "stupid ass mother fucker"  (*Id*)

- Brooks and Pogue cursed and called each other "mother fucker" while working at the plant (*Id.*)

- White and Poncho (real name unknown) engaged in physical and verbal altercations that resulted in two fights that disrupted the work place. Brooks had to break up.  (Doc. # 26, Ex. A, Dep. Grice at 123-24; Doc. # 28, Aff. La Donna Powell, Ex. 7)

- Denielle Heard received a written reprimand from Brooks for the repeated use of profanity  (Doc. # 28, Ex. 11; Doc. # 26, Ex. C, Dep. Brooks at 54)

- In a written statement, Heard reported that another employee, Jatarek, used profanity including "fuck."[21]  (Doc. # 28, Ex. 12)  Brooks was aware of this

---

[20]  The court culled the employees' identities from the evidentiary submissions in support of and in opposition to the motion for summary judgment.  In many incidents, the employees are not identified by full name so the court has added the LNU (last name unknown) designation.

[21]  In her statement, Heard reported the following incident:

I Danielle Heard was talking to Jatarek he was upset with Avery because we had a meeting and Avery was getting on to use about not doing what he ask Then Jatarek said Fuck Avery thats why my homeboy Fucking his baby Mother I said who he said Justin then Jatarek called Justin over and I asked Justin what he been fucking and he said Avery Baby Mother thats old news and they gave each other high five!

(Doc. # 28, Ex. 12)

incident.  (Doc. # 26, Ex. C, Dep. Brooks at 56-57)

•   Dimitri Morris received a written reprimand from Pogue after she received several complaints that he was disrupting the work floor.  (Doc. # 28, Ex. 14)

•   When Dimitri Morris caused another disruption on the work floor within five (5) days of receiving a reprimand, Pogue gave him a second written reprimand and demoted him from team leader to material handler.  (Doc. # 28, Ex. 15; Doc. # 26, Ex. B, Dep. Pogue at 36-40)

•   Alonzo Russell and LaTravious Rutledge received written counseling statements after a report was made that both employees were cussing.  (Doc. # 28, Ex. 17 & 18; Doc. # 26, Ex. B, Dep. Pogue at 45)

•   Rutledge reported that Russell used profanity towards him including calling him "a fucking sissy."[22]  (Doc. # 28, Ex. 18)

•   A memo was placed in employee Robert Davis' file after he "pulled his pants down" when  he was approached by his manager about his attendance.  (Doc. # 28, Ex. 19)

•   Katina Cleveland received a written reprimand after cursing her supervisor.[23] (Doc. # 28, Ex 20)

•   In a written statement, employee Nafeesah Swain reported that Cleveland told her "to stay the fuck out her face because [she's] the one that got all this shit started in the first place."  (*Id*. at 2).

_____

[22] In pertinent part, Rutledge reported that Russell said

Mr. Alonzo meet me by WD, UD RCI line and I told him I returned his jack.  He said, "Don't do that shit anymore."  I said, "what shit" he said taking my jack.  I told him that I informed his wife and he told me "to shut the fuck up."  I turned around and walked off saying I don't have time for this and then he said, "turn back around and say it to my face you fucking sissy."  I proceeded looking for Lisa Johnson, Valisha Pogue, and Roland but I was unsuccessful.  So I contacted Debbie Meeks in her office.  She said, that she will do a follow-up after I have talked to my supervisor and Roland. . . .

(Doc. # 28, Ex. 18 at 3)

[23] Cleveland was written for telling her supervisor she "didn't give a damn what [the supervisor] said."  (Doc. # 28, Ex. 20).

20

- Steve Crockett, a quality control manager, used curse words including the word "fuck" because, according to Pogue, "he has a foul mouth when he gets mad" (Doc. # 26, Ex. B, Dep. Pogue at 19-21; Doc. # 26, Ex. C, Dep. Brooks at 46)

- Poncho and White physically fought in the parking lot.  ((Doc. # 26, Ex. B, Dep. Pogue at 28)

- Michael Ellis cursed and was involved in verbal altercations with other employees at SL Alabama (Doc. # 26, Ex. B, Dep. Brooks at 48)

- Craig LNU and another employee got into a verbal altercation that threatened to escalate into a physical fight  (*Id*. at 59-60)

- DeShannon McCoy was involved in a verbal altercation in which she cursed at another employee because "she was calling me out my name ho stupid bitch"  (*Id*. at 62)

- White and Slim (real name unknown) engaged in a "large, heated cussing match" on the work floor.  (Doc. # 26, Ex. A, Dep. Grice at 123)

These African-American employees used profanity in the work place; many used the word "fuck" and caused disruptions on the work floor.  However, it is undisputed that none of these employees were terminated, and many of them were not even disciplined. Consequently, the court concludes that Grice has demonstrated that she was similarly situated to African-American employees, and that there exists genuine disputes of material fact about whether the similarly situated employees were treated more favorably than Grice because of their race.

At this juncture, the burden shifts to SL Alabama to rebut the presumption of disparate treatment by offering a legitimate non-discriminatory reason for Grice's termination. SL Alabama asserts that Grice was fired for using the word "fuck" and for disrupting the

21

workplace.[24]  The reasons offered by the SL Alabama for Grice's termination are legitimate,

non-retaliatory reasons for her termination.

Thus, Grice must now present some evidence that SL Alabama's reasons for

terminating her were pretextual.

> In order to show pretext, the plaintiff must "demonstrate that the proffered
> reason was not the true reason for the employment decision .... [The plaintiff]
> may succeed in this either directly by persuading the court that a
> discriminatory reason more likely motivated the employer or indirectly by
> showing that the employer's proffered explanation is unworthy of credence."
> *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089,
> 1095, 67 L.Ed.2d 207 (1981). "[A] plaintiff withstands summary adjudication
> by producing sufficient evidence to allow a reasonable finder of fact to
> conclude that the defendant's articulated reasons for its decision are not
> believable." *Howard v. BP Oil Co.,* 32 F.3d 520, 526 (11th Cir.1994) (citing
> *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407
> (1993)).

*Jackson v. State of Ala State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Grice contends that the defendant's failure to discipline or terminate African-

American employees for similar acts of misconduct, coupled with SL Alabama's

inconsistent, or "shifting," explanations for terminating her, and SL Alabama's failure follow

its progressive discipline policy,[25] demonstrate that its reasons for terminating her were

---

[24]  SL Alabama argues that because Grice admitted to the Alabama Department of Industrial
Relations that she disrupted the workplace, she cannot establish a prima face case of disparate treatment.
The court disagrees.  Grice denied making the admission in her application for unemployment benefits.
However, even if the court considered Grice's admission, it is undisputed that other employees disrupted the
work place, admitted doing so, but were not fired.

[25]  "A plaintiff can also show pretext by demonstrating that the employer did not follow its normal
procedures in terminating [her] employment." *Ritchie v. Indus. Steel, Inc.*, 426 Fed. Appx. 867, 873 (11th
Cir. 2011).  While Grice has presented some evidence that SL Alabama had a handbook that details
progressive discipline, the evidence is clear that SL Alabama did not follow the discipline policy with regard

pretextual.  It is at this juncture that the court concludes there are genuine disputes of material fact that preclude summary judgment.

As previously noted, SL Alabama failed to terminate or otherwise discipline numerous African-American employees who engaged in similar acts of misconduct.  In addition, the defendant has offered several different reasons for terminating Grice.  In response to Grice's E.E.O.C. charge, SL Alabama asserted that Grice was not actually terminated but that she walked off the job.  (Doc. # 28, Ex. 6).  Grice testified that Pogue told her she was terminated for cursing.  (Doc. # 26, Dep. Grice at 139).  On June 24, 2011, the day after she was fired, Wilson told Grice she was fired for disrupting the workplace.  (*Id*. at 142).  Brooks notified Wilson in an email that he had terminated Grice.

> Grace Grice has been terminated for excessive profanity directed at another associate as well as myself and my team leader.  Carlton Floyd was pushing a buggy and got a little close to her, she in turn started to use profanity in a loud voice and gesture.  When the team leader tried to talk to her, she would not listen and started to use profanity at him as well.  He called me to the line, I asked her to come down to the desk, she refused to come.  Finally when I did get her to come to the desk she was using profanity all the way to the desk and even after I asked her what the problem was and her response was yall are all the same and then started back cursing so I asked her for her badge and she said why, are you firing me? and I said I just need your badge, she then jumped up and said I'm not going no got (sic) damn where and all yall asses will be in the front office tomorrow she then walked back towards the line to get her belongings and gave Ladonna Black a high five and then proceeded to get her belongings cursing from LC22 line all the way to the clock, from there I clocked her out and escorted her to the door.

(Doc. # 28, Ex. 10)

---

Grice but it also did not follow it with respect to any other employee either.

It was not until their depositions that Brooks and Pogue testified that Grice used excessive profanity including the words "mother fucker asses."  (Doc. # 26, Ex. B, Dep. Pogue at 56; Doc. # 26, Ex. C, Dep. Roland Brooks at 93-94).  Grice and Powell both testified that Grice did not curse excessively and while Grice admits that she used the word "fuck," she directed it at Floyd, not at Brooks and Pogue.  "A plaintiff will withstand summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Blue v. Dunn Constr. Co., Inc.*, 453 Fed. Appx. 881, 884 (11th Cir. 2011) *quoting Jackson,* 405 F.3d at 1289.  At the summary judgment stage, it is not necessary for Grice to prove that SL Alabama's articulated reasons for terminating her are false; it is sufficient that a reasonable fact finder could conclude that SL Alabama's reasons should not be believed.  There are genuine disputes of material fact regarding Grice's actions on the night she was terminated.  The inconsistencies in the explanation for Grice's termination when coupled with the evidence that African-American employees were not terminated for similar acts of misconduct, would provide a basis for a fact finder to reject the defendant's proffered reason for termination. While that rejection does not compel judgment for the plaintiff, *Reeves v. Sanderson Plumbing Prod.*, *Inc.*, 530 U.S. 133, 146 (2000), a trier of fact may infer discrimination from the falsity of an employer's explanation along with the elements of a prima facie case.  *Id*. at 147.  Consequently, the court concludes that genuine issues of material fact exists about

24

whether SL Alabama's reasons for terminating Grice should not be believed, were pretext for terminating Grice or that discriminatory reasons more likely motivated SL Alabama's decision.  For these reasons, SL Alabama's motion for summary judgment regarding Grice's discriminatory termination claim is due to be denied

### 3.    RETALIATION

Grice also asserts a separate claim of retaliation pursuant to Title VII and 42 U.S.C. § 1981.  Specifically, Grice alleges that she was terminated in retaliation for complaining to Wilson about race and gender discrimination.  Under Title VII, employers are prohibited from discriminating against an employee who has either (1) opposed an employment practice made unlawful under Title VII or (2) made a charge, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. § 2000e-3(a).  The plaintiff may also pursue a retaliation claim under § 1981.  *See Andrews v. Lakeshore Rehabilitation Hosp.,* 140 F.3d 1405, 1409-13 (11th Cir. 1998).

In order to establish a prima facie case of retaliation, Grice must demonstrate that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action.  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Gutpa v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Olmsted v. Taco Bell Corp*., 141 F.3d 1457, 1460 (11th Cir. 1998).  The causal connection requirement must be construed broadly. *See generally E.E.O.C. v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993)

("a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated").

Grice contends that her termination was in retaliation for complaining about race and gender discrimination in general, and the denial of promotions to material handler by Brooks and Pogue in particular. SL Alabama argues that Grice cannot establish a *prima facie* case of retaliation because she did not participate in protected activity and she cannot demonstrate a causal connection between any activity and her termination. The court disagrees.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*.

*E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). *See also Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999).

According to Grice, she complained to Brooks, Pogue, and White about discriminatory promotion practices in the months before she was fired, and she lodged a formal discrimination complaint with Wilson two weeks before she was terminated. Grice clearly establishes that she was engaged in statutorily protected activity and that she suffered a materially adverse action.

> Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment. *See, e.g., Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed

formal complaints, but extends as well to those, like [Grice], who informally voice complaints to their superiors or who use their employers' internal grievance procedures.")

*Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501 (11th Cir. 2000). Clearly, complaining about race and gender discrimination are protected activities. Moreover, Grice contends that she was fired by Brooks and Pogue in retaliation for complaining about their discriminatory promotions practices to Wilson.  Construing the facts in a light most favorable to Grice, she was terminated within two weeks of complaining about race and gender discrimination.

"This court has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  *E.E.O.C.*, 988 F.2d at 1571-72 *quoting Simmons v. Camden County Bd. of Ed.*, 757 F.2d 1187, 1189 (11th Cir. 1985).  *See also  Shannon v. Bellsouth Telecomm., Inc*., 292 F.3d 712, 716–717 (11th Cir. 2002); *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001)  "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action."  *Clover,* 176 F.3d at 1354 (quotation omitted).  Causation may be inferred by close temporal proximity between the protected activity and the adverse employment action.  *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir.2007).  "[A] temporal proximity between the harassment and a tangible employment action can give rise to a genuine issue of fact as to causation."  *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227,

1232 (11th Cir. 2006).  Grice's termination within two weeks of complaining about race and gender discrimination is sufficiently close in time to create a genuine dispute of material fact regarding causation.

The defendant argues that Grice cannot establish the requisite causal connection because she cannot demonstrate that the decision-makers, Brooks and Pogue, had any knowledge that she had complained to Wilson.  First, there is a genuine dispute of material fact regarding Brooks and Pogue's knowledge.  More importantly, however, while it is true that temporal proximity alone is not sufficient when the *unrebutted* evidence shows that the decision maker did not have knowledge of the employee's protected conduct, *see Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 798-99 (11th Cir. 2000), the defendant has presented no evidence, much less unrebutted evidence, regarding Brooks' knowledge of Grice's complaints of discrimination.  For the purpose of a *prima facie* case of retaliation, temporal proximity is sufficient for the causal connection element *provided that* SL Alabama has not presented *unrebutted* evidence of Brooks' lack of knowledge.  This it has failed to do.  Consequently, the court concludes that Grice has established a prima facie case of retaliation.

Once the plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  If the defendant offers a legitimate reason for the adverse employment action,

28

the presumption of retaliation disappears.  *Id*.  The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.  *Olmsted*, 141 F.3d at 1460.

At this juncture, the burden shifts to SL Alabama to rebut the presumption of retaliation by offering legitimate reasons for terminating Grice.  The reason offered by SL Alabama is a legitimate, non-retaliatory reason.  Thus, Grice must now present some evidence to rebut SL Alabama's  reasons for terminating her.

Relying on the same evidence she presented to demonstrate pretext on her discriminatory termination claim, Grice argues that SL Alabama's reasons for firing her were pretext for retaliation.   The court concludes that there are genuine disputes of material fact regarding Grice's retaliatory termination claim.  Coupled with the inconsistencies in the explanation for Grice's termination and evidence that African-American employees were not terminated for similar acts of misconduct, the court concludes that a reasonable fact finder could reject the defendant's proffered reason for termination, and determine that Grice was terminated in retaliation for complaining about race and gender discrimination. Consequently, the court concludes that genuine issues of material fact exists about whether SL Alabama's reasons for terminating Grice should not be believed, were pretext for terminating Grice or that retaliatory reasons more likely motivated SL Alabama's decision. For these reasons, SL Alabama's motion for summary judgment regarding Grice's retaliation claim is due to be denied.

## IV.  CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED that the defendant's motion for summary judgment (doc. # 26) be and is

hereby DENIED.

Done this 8th day of August, 2013.


     /s/Charles S. Coody                     
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE